IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY _____ D.C.

05 MAY 11 PM 3: 36

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

WILLIE H. JOHNSON,

      Plaintiff,

vs.

DENYS YEAGER, et al.,

      Defendants.

No. 05-2146-B/P

ORDER ASSESSING $150 FILING FEE
ORDER OF DISMISSAL
ORDER DENYING APPOINTMENT OF COUNSEL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

Plaintiff Willie H. Johnson, Tennessee Department of Correction ("TDOC") prisoner number 85389, an inmate at the West Tennessee State Penitentiary ("WTSP")[1] in Henning, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 on February 23, 2005, along with a motion seeking appointment of counsel. The Clerk shall record the defendants as Denys Yeager and the TDOC.

---

[1] The word "prison" is used in this order to refer to all places of confinement or incarceration, including jails, penal farms, detention and classification facilities, or halfway houses.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 5-11-05

I.    <u>Assessment of Filing Fee</u>

Under the PLRA, 28 U.S.C. § 1915(b), all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C. § 1914(a).[2] The <u>in forma pauperis</u> statute, 28 U.S.C. § 1915(a), merely provides the prisoner the opportunity to make a "downpayment" of a partial filing fee and pay the remainder in installments.

In this case, plaintiff has properly completed and submitted both an <u>in forma pauperis</u> affidavit and a prison trust fund account statement. Pursuant to 28 U.S.C. § 1915(b)(1), it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance in or deposits to the plaintiff's trust fund account for the six months immediately preceding the completion of the affidavit. When the account contains any funds, the trust fund officer shall collect them and pay them directly to the Clerk of Court. If the funds in plaintiff's account are insufficient to pay the full amount of the initial partial filing fee, the prison official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's

---

[2]    Because this action was filed prior to March 7, 2005, the new $250 filing fee is inapplicable.

account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10.00, until the entire $150.00 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment.

All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 167 N. Main, Room 242, Memphis, TN 38103

and shall clearly identify plaintiff's name and the case number on the first page of this order.

If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order.

3

If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose appropriate sanctions, including dismissal of this action or a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison. The Clerk is further ORDERED to forward a copy of this order to the warden of the WTSP to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). The Clerk shall not issue process or serve any papers in this case.

II.    Analysis of Plaintiff's Claims

This lawsuit concerns the failure of prison officials to return plaintiff's legal papers to him, which, he contends, has deprived him of his First Amendment right of access to the courts. By way of background, the complaint alleges that, in response to a grievance filed by the plaintiff on June 22, 2003, the TDOC issued an order on August 15, 2003 directing the Food Service Department to comply with a doctor's order that plaintiff be given a mechanical soft diet. Subsequently, on August 28, 2003, Food Service Manager Shelia [sic] Maze, who is not a party to this

4

lawsuit, refused to serve the plaintiff items from the regular menu. Because the plaintiff did not want the alternate foods provided to Muslims, Maze had plaintiff placed in punitive segregation and charged him with the disciplinary offense of creating a disturbance. Plaintiff asserts this action was taken in retaliation for his previous filing of a grievance on which he obtained redress. The disciplinary board found the plaintiff guilty, and the warden denied the plaintiff's appeal on September 24, 2003.

Subsequently, on November 18, 2003, plaintiff filed a petition for a writ of certiorari challenging his disciplinary conviction. Plaintiff was assisted in his efforts by an inmate legal helper by the name of Jabari Issa Mandela, a/k/a John Henry Wooden, TDOC prisoner number 96305.[3] On February 18, 2004, plaintiff asked Mandela a/k/a Wooden to review a response he had received to his state-court petition. On March 3, 2004, Mandela a/k/a Wooden was sent to punitive segregation along with the plaintiff's legal papers for his certiorari petition and other pending cases, including a civil suit the plaintiff filed in Lauderdale County Chancery Court against Maze and other persons,

_____

[3] Because of his history of filing meritless litigation, and because he instituted a lawsuit in the name of another inmate without that inmate's knowledge or permission, the Court issued an order in Mandela v. Hesson, No. 99-2818-D/Bre (W.D. Tenn. dismissed Apr. 20, 2000), that enjoined Mandela a/k/a Wooden "from preparing any pleadings, affidavits, motions, or other documents of any sort for any other person for filing in this Court." The Court has no knowledge of whether any other court has imposed a similar restriction on Mandela a/k/a Wooden.

Johnson v. Bates, et al., and a postconviction petition. Mandela a/k/a Wooden attempted to return the plaintiff's legal files to him, via another inmate, on March 15, 2004, but defendant Yeager confiscated the documents. The complaint alleges that "Counselor Yeager summoned me to his office and told me that I was in violation of a federal court order by receiving assistance from inmate Mandela with my legal [ca]ses."[4] Plaintiff asserts that, when he learned Yeager had confiscated his legal papers, he asked Unit Manager Wright, who is not a party to this action, to retrieve them for him. Wright allegedly "warned [plaintiff] that receiving assistance from inmate Mandela would cause the federal court to sanction me and they was not going to give my legal papers back because Mandela had helped me."

The complaint alleges that plaintiff's petition for a writ of certiorari was denied on July 13, 2004 and costs were imposed on the plaintiff. Because of his disciplinary conviction, the plaintiff was also denied parole. He also alleges that his ability to litigate Johnson v. Bates, et al. and other cases has been hindered because of the confiscation of his case file.[5]

---

[4]    If Yeager was referring to the order issued in Mandela v. Hesson, No. 99-2818-D/Bre (W.D. Tenn.), he is, technically, incorrect. The Court enjoined Mandela a/k/a Wooden from preparing legal papers for other inmates for filing in this court. It did not enjoin Mandela a/k/a Wooden from preparing legal papers for filing in state court, and it did not enjoin any other inmate from accepting help from Mandela a/k/a Wooden.

[5]    It appears that the plaintiff filed a motion in Johnson v. Bates, et al. seeking to have the defendants held in contempt because of their refusal to return his case file. The complaint does not state the outcome of that motion.

Johnson seeks injunctive relief and compensatory and punitive damages.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C. § 1997e(a),

> a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.

Id. at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989, 985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison officials fail to respond in

a timely manner to a grievance), <u>cert. denied</u>, 125 S. Ct. 1639 (2005); <u>Baxter v. Rose</u>, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege exhaustion adequately may not amend his complaint to avoid a <u>sua sponte</u> dismissal); <u>Curry v. Scott</u>, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to dismiss for failure to exhaust when plaintiffs did not submit documents showing complete exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e) requires the prisoner to exhaust his administrative remedies before filing suit and, therefore, he cannot exhaust these remedies during the pendency of the action. <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999). Finally, the Sixth Circuit recently held that district courts are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that contains any unexhausted claims. <u>Jones Bey v. Johnson</u>, No. 03-2331, slip op. at 4-7 (6th Cir. Apr. 27, 2005).[6]

This is the second case this plaintiff has filed concerning this matter. The first action, <u>Johnson v. Yeager, et al.</u>, No. 04-2814-D/P (W.D. Tenn.), was dismissed without prejudice on January 31, 2005 because the plaintiff failed to satisfy his burden of demonstrating that he had exhausted his administrative remedies. In response to that order, the plaintiff re-filed his

---

[6]   This opinion, which will be published in the Federal Reporter, is not yet available on WESTLAW.

8

complaint, accompanied by approximately three inches of documents, arranged in no particular order, most of which have no bearing on whether the plaintiff has exhausted the claims asserted in this complaint. A review of those documents indicates that the plaintiff filed a grievance concerning the confiscation of his legal papers on or about March 23, 2004 (Grievance No. 021461). That grievance named defendant Yeager. After conducting a hearing, the grievance committee issued a recommendation on March 31, 2004 that the plaintiff's papers be returned to him after institutional investigators had completed their review. On April 5, 2004, the warden disagreed with the proposed response and, instead, determined that the supervisor's response was appropriate.[7] Plaintiff appealed to TDOC, and the TDOC Assistant Commissioner for Operations concurred with the supervisor on April 21, 2004. It appears, therefore, that the plaintiff has exhausted his claim.

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

(1)  is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2)  seeks monetary relief from a defendant who is immune from such relief.

---

[7]    The supervisor's response stated that "[t]he legal work in question was taken from a inmate who had just been released from Unit 2. Inmate Mandella had sent it to him from Unit 2. Inmate Mandella is under federal court order not to do legal work for any inmate. The item in question was sent to institutional investigator."

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B). Even claims that have not been exhausted may be dismissed on the merits. 42 U.S.C. § 1997e(c)(2). Plaintiff's complaint is subject to dismissal in its entirety.

Johnson's claim about the confiscation of his legal papers is, in actuality, a claim that he was deprived of his First Amendment right of access to the courts. See Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996); see also Bounds v. Smith, 430 U.S. 817, 822 (1977). The Supreme Court has held that "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds at 828. However,

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996); see also Thaddeus-X v. Blatter, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." Rodgers v. Hawley, 14 Fed. Appx. 403, 409 (6th Cir. June 22, 2001) (citing Lewis v. Casey, 518 U.S. at 351-53); see also Hadix v. Johnson, 182 F.3d 400, 405-06 (6th Cir. 1999) (explaining how Lewis altered the "actual injury" requirement previously articulated by the Sixth Circuit). In Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996), the Sixth Circuit explained that "actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim."

In this case, plaintiff does not adequately allege that the defendants' actions caused him any actual injury. First, although the complaint indicates that the plaintiff's petition for a writ of certiorari challenging his disciplinary conviction was denied and costs were imposed, the complaint provides no information that would permit the Court to conclude that plaintiff had a meritorious challenge to his disciplinary conviction that he could have presented but for the actions of defendant Yeager. Indeed, the complaint does not even allege that the plaintiff was unable to reply to the State's response to his petition. Colvin v. Schaublin, 113 Fed. Appx. 655, 657-58 (6th Cir. Sept. 21, 2004).

11

Second, plaintiff's allegation that he was hindered in his prosecution of his civil action and his postconviction petition is entirely conclusory and does not establish either that he had nonfrivolous claims or that he missed deadlines or was otherwise tangibly prejudiced in his ability to prosecute his claims.[8]

The complaint does not disclose the basis for plaintiff's claim against the TDOC. When a plaintiff completely fails to allege any action by a defendant, it necessarily "appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985). To the extent plaintiff's claim arises from the failure of prison officials, and the TDOC official who reviewed the plaintiff's grievance, to order Yeager to return the plaintiff's legal materials to him, the claim is without merit for the reasons previously stated.

---

[8]    Notwithstanding the plaintiff's failure adequately to allege actual injury, it is appropriate briefly to address the merits of the plaintiff's claims. Even if the confiscation of the plaintiff's legal papers had resulted in an actual injury, the defendant would escape liability "if the prison regulation at issue was reasonably related to legitimate penological interest." Colvin, 113 Fed. Appx. at 658 (citing Turner v. Safley, 482 U.S. 78, 89-91 (1987)). As previously mentioned, see supra p. 5 n.3, this Court has enjoined Mandela a/k/a Wooden "from preparing any pleadings, affidavits, motions, or other documents of any sort for any other person for filing in this Court." That action was taken because of (i) his filing of frivolous lawsuits of his own behalf; (ii) his misrepresentation to the Court concerning the number of prior lawsuits he had filed; and (iii) his filing of a lawsuit on behalf of another inmate without that inmate's knowledge and consent. The Court expects prison officials to enforce its orders and, even if the conduct in this case was not encompassed by the Court's order, prison officials have a legitimate interest in preventing Mandela a/k/a Wooden from acting as a writ writer because he has filed an unauthorized lawsuit in the name of another inmate.

Accordingly, the Court DISMISSES the complaint in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim on which relief may be granted. In light of the dismissal of this action, the motion for appointment of counsel is DENIED.

III. Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision in forma pauperis. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal in forma pauperis. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not

13

taken in good faith and plaintiff may not proceed on appeal <u>in forma pauperis</u>.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[9] In <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in <u>McGore</u> and § 1915(b).

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by this plaintiff, this is the first dismissal in this district of one of his cases for failure to state a claim or as frivolous.

IT IS SO ORDERED this _11_ day of May, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

---

[9]    Effective November 1, 2003, the fee for docketing an appeal is $250. <u>See</u> Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913. Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 4 in
case 2:05-CV-02146 was distributed by fax, mail, or direct printing on
May 11, 2005 to the parties listed.

---

Willie H. Johnson
WEST TENNESSEE STATE PENITENTIARY
85389
P.O. Box 1150 Site 2
Henning, TN 38041--115

Honorable J. Breen
US DISTRICT COURT